UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Ann Finch, Individually and as Executor of the Estate of Franklin Finch, <br><br> Plaintiff, <br><br> vs. <br><br> U.S. Fidelity and Guaranty Company; Zurich American Insurance Company; Peter Protopapas as Court Appointed Receiver for Covil Corporation; and Wall Templeton & Haldrup, PA, <br><br> Defendants. | Civil Action No. 3:19-cv-01827 <br><br> **ORDER AND OPINION** |

This matter is before the Court for review of Plaintiff Ann Finch, individually and as executor of the estate of Franklin Finch's ("Finch" or "Plaintiff") motion to remand (ECF No. 13). For the reasons set forth in this Order, Plaintiff's motion to remand is granted because the Court lacks subject matter jurisdiction over this action. Accordingly, all other pending motions—Defendant Zurich American Insurance Company's ("Zurich") motion to realign (ECF No. 4); Defendants Zurich, Sentry Casualty Company ("Sentry"),[1] and U.S. Fidelity and Guaranty Company's ("USF&G") motion to dismiss (ECF No. 10); and Defendant Wall Templeton & Haldrup, PA's ("WTH") motion to dismiss (ECF No. 11)— are denied as moot.

## **BACKGROUND**

This case stems from a federal tort suit regarding asbestos exposure in the Middle

---

[1] All claims against and by Sentry have since been dismissed with prejudice, and Sentry has been terminated as a party to this action. (ECF Nos. 49 & 51.) Therefore, Sentry has been removed from the case caption and will only be further discussed as necessary to describe the procedural history of the case.

1

District of North Carolina. *See Finch v. BASF Catalysts, LLC, et al.* ("*Finch*"), No. 1:16-cv-01077-CCE-JEP (M.D.N.C.). In that case, Ann Finch, as executor of the estate of Franklin Finch, received a judgment against Covil Corporation ("Covil") in excess of 30 million dollars. That original suit is now on appeal to the Fourth Circuit. *See Finch v. Covil Corporation*, No. 19-1594 (4th Cir. June 4, 2019). A related suit for declaratory judgment was also filed in the Middle District of North Carolina by one of Covil's liability carriers for the purpose of determining coverage in regards to Finch and other claimants. *See Zurich American Insurance Company v. Covil Corporation, et al.*, No. 1:18-cv-00932-CCE-JLW (M.D.N.C.).

Plaintiff filed the instant lawsuit as a declaratory judgment action on May 30, 2019 in the South Carolina Court of Common Pleas, naming as defendants WTH, Sentry, USF&G, and Zurich (hereinafter USF&G and Zurich are referred to collectively as Covil's "Insurers," and collectively with WTH as "Defendants"). Plaintiff also named as a defendant Peter Protopapas in his role as court appointed receiver for Covil ("Receiver"). USF&G and Zurich are two of Covil's liability carriers, and WTH is the law firm of Covil's prior defense counsel. In the complaint, Plaintiff seeks a declaration, *inter alia*, that Defendants are fully responsible for conduct prior to November 2, 2018 (the date on which Peter Protopapas was appointed as Receiver by South Carolina State Court order) as Covil's alter ego, agency or instrumentality. (ECF No. 1-5 at 11–13.)

Zurich removed the action to this Court on June 27, 2019, with consent of USF&G, contending that this Court should exercise diversity jurisdiction over the case by finding WTH and the Receiver to be fraudulently or nominally joined to this action. (ECF No. 1.) WTH filed a motion to dismiss Plaintiff's claims (ECF No. 11), as did the Insurers (ECF

2

No. 10). The Insurers also filed a motion to realign the parties (ECF No. 4), requesting that the Court realign the Receiver as a plaintiff in this action. On July 8, 2019, Plaintiff filed a motion seeking to remand this matter to State Court. (ECF No. 13.) Subsequently, the Court stayed all other deadlines while the matter of remand was considered. (ECF No. 16.) On July 22, 2019, the Insurers and WTH filed their respective responses in opposition to the motion to remand. (ECF Nos. 22 & 23.) On July 26, 2019, Plaintiff filed replies to each opposition in turn. (ECF Nos. 27 & 28.) The matter is ripe for consideration and the Court now issues the following ruling.

## LEGAL STANDARDS

**Removal Standard for Diversity Jurisdiction**

Federal district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. 28 U.S.C. § 1332(a)(1). Under the rules applicable to removal based on diversity of citizenship, the "forum defendant rule" states: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

> The forum defendant rule is "designed to preserve the plaintiff's choice of forum, under circumstances where it is arguably less urgent to provide a federal forum to prevent prejudice against an out-of-state party." [*Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377, 380 (7th Cir. 2000)]. In other words, the forum defendant rule disallows federal removal premised on diversity in cases where the primary rationale for diversity jurisdiction—to protect defendants against presumed bias of local courts—is not a concern because at least one defendant is a citizen of the forum state. *See Dresser Indus., Inc. v. Underwriters at Lloyd's of London,* 106 F.3d 494, 499 (3d Cir.1997) ("If diversity jurisdiction exists because of a fear that the state

3

> tribunal would be prejudiced towards the out-of-state plaintiff or defendant, that concern is understandably allayed when the party is joined with a citizen from the forum state."); *Lively v. Wild Oats Mkts., Inc.,* 456 F.3d 933, 940 (9th Cir.2006).

*Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013).

Given the purpose of the removal statutes and "Congress' clear intention to restrict removal," Courts are required to strictly construe those statutes and "to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (citations omitted); *see also Dixon v. Coburg Diary*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) ("We are obliged to construe removal jurisdiction strictly because of the significant federalism concerns' implicated. Therefore, if federal jurisdiction is doubtful, a remand to state court is necessary." (citations, alterations, and quotation marks omitted)).

**Fraudulent Joinder**

"[T]he fraudulent joinder doctrine 'effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "'The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor.'" *Id.* (quoting *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir.1999)). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley*, 187 F.3d at 424 (citation omitted). "The removing party must show either 'outright fraud in the plaintiff's pleading of jurisdictional facts or that there is

4

*no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Johnson*, 781 F.3d at 704 (emphasis in original) (quoting *Hartley,* 187 F.3d at 424). "[I]n determining 'whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available.'" *Mayes*, 198 F.3d at 464 (quoting *AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990)).

## DISCUSSION

In order for Zurich's removal not to offend the forum defendant rule, it must demonstrate that no Defendant is a resident of South Carolina. *See* 28 U.S.C. § 1441(b)(2). Plaintiff's complaint includes claims seeking a declaration against WTH. (ECF No. 1-5.) It is undisputed that WTH is a citizen of South Carolina. (*See* ECF No. 13-1 (South Carolina Secretary of State incorporation filing showing WTH to be a South Carolina corporation).) Thus, in order to show that remand is not required, Defendants must first show that WTH was fraudulently joined, as they assert in the notice of removal (ECF No. 1 at 7–9), the motion to realign the Receiver (ECF No. 4 at 2), the Insurer's motion to dismiss (ECF No. 10 at 7–9), WTH's motion to dismiss (ECF No. 11 at 8–10), and Defendants' responses to the motion to remand (ECF Nos. 22 & 23). They cannot do so.

Plaintiff seeks a declaration that WTH, along with the Insurers, is fully responsible for conduct as Covil's alter ego prior to the Receiver's appointment. (*See* ECF No. 1-5 at 13 (Eighth Cause of Action).) The South Carolina Supreme Court has stated, "An alter-ego theory requires a showing of (1) total domination and control of one entity by another

5

and (2) inequitable consequences caused thereby." *Oskin v. Johnson*, 735 S.E.2d 459, 465 (S.C. 2012) (citing *Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty.*, 638 S.E.2d 685, 692 (S.C. 2006)). In her complaint, Plaintiff alleges, *inter alia*:

> WTH, in conjunction with the Insurers, managed Covil, making all determinations as to the use and disposition of Covil's assets which consisted primarily of corporate documents and insurance policies. State Court Complaint ¶15.
>
> WTH and the Insurers made all determinations as to disposition of Covil Asbestos Suits as well as the treatment and characterization of claims under the Covil insurance policies. *Id.* ¶16.
>
> WTH acted in concert with the Insurers for the common purpose of ensuring that there was no independent person or entity acting by or on behalf of Covil. *Id.* ¶17.
>
> WTH and the Insurers effectuated their common purpose of exclusive, unilateral control of Covil by running Covil's affairs in all material respects. *Id.* ¶ 18.
>
> WTH and the Insurers unilaterally determined what was best for Covil, or disregarded what was best for Covil, acting in their own interest, regardless of whether there was an actual or potential conflict between their interest and Covil's interest. *Id.* ¶ 19.
>
> WTH's above-described actions were for the purpose of earning a fee from the Insurers rather than protecting Covil. *Id*. ¶ 21.
>
> WTH, in conjunction with the Insurers, determined that Covil would not resolve the *Finch* suit for policy limits and refused to reveal to the Finches the amounts of available insurance; as a result, Covil was exposed to a judgment many more times the Insurers' alleged liability under the insurance policies. *Id.* ¶ 32.
>
> Email communications between WTH and the Insurers demonstrate that Defendants determined—without any input from an independent Covil, and in breach of their duties to Covil—how, or if, Covil would accept service and react to service in asbestos cases. *Id.* ¶ 34–35.

(ECF No. 1-5 at 6–7, 10–11.) Plaintiff contends that as a result of decisions made by WTH and the Insurers acting as Covil, Covil was placed in default and exposed to damages in

6

the millions of dollars. (ECF No. 27 at 6.) Moreover, Plaintiff asserts that, whereas a judgment was entered in favor of the Finches for more than $30,000,000, unless WTH and the Insurers are found to be the alter egos of Covil, that judgment may be unrecoverable, resulting in great inequity to Plaintiff. (*Id.*)

In order to succeed on their fraudulent joinder theory, Defendants must show either "outright fraud" or "no possibility" of a viable claim in State court. *See Hartley,* 187 F.3d at 424. Defendants do not assert that WTH was joined as a matter of outright fraud, so they must instead satisfy the standard that there is no possibility or "glimmer of hope" that Plaintiff's claims could succeed. *Id.* at 426 (stating that a plaintiff seeking to defeat removal need only show "a slight possibility of a right to relief," and "[o]nce the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends"). WTH argues that, during its period representing Covil, WTH could not have been the alter ego of Covil if the Insurers were because WTH could not have exercised total domination and control. (ECF No. 23 at 5.) However, this argument is unavailing under alter ego jurisprudence, which holds that multiple defendants can together exercise total domination. *See, e.g.*, *Newton Family LLC v. Cathcart*, No. 2:07-CV-2964-DCN, 2008 WL 11349831, at *6 (D.S.C. Apr. 10, 2008) (declining to dismiss claims where complaint alleged that "all of the [d]efendants are alter egos of the other, such that each [d]efendant should be held jointly and severally liable for the acts and/or omissions of all other [d]efendants").

WTH further argues that the "timing of events in the history of this case make it impossible to allege Wall Templeton has total and complete control over Covil or perpetrated any injustice against Plaintiff." (ECF No. 23 at 6.) Here, WTH relies on the

fact that WTH began representing Covil in April 2018 and asserts this "necessarily" means that WTH "did not have anything to do with the facts that led to Plaintiff's judgment or with the accrual and filing of Plaintiff's case." (*Id.*) However, this argument misses the central point of Plaintiff's alter ego claim—that WTH, *in the process of controlling how the Finch case was handled*, together with the Insurers exercised total domination and control over Covil, which had no vehicle or instrumentality to vindicate its interests. The *Finch* trial concluded in October 2018, when the jury awarded Plaintiff a judgment for her wrongful death claim. (*See* ECF No. 27-4 at 4.) Plaintiff cogently argues:

> [I]t is absolutely undisputed that there was no one to make decisions for Covil other than WTH and the Insurers and that those entities did, in fact, make such decisions. Indeed U.S. District Judge Catherine Eagles found:
>
>> It appears undisputed that Covil has no officers, directors, or employees capable of taking the actions required to obtain counsel or file or defend any lawsuit and that, until recently, three of Covil's insurers Zurich, Sentry Casualty Company, and United States Fidelity and Guaranty Company controlled Covil's defense in any underlying asbestos litigation.
>
> *See* Memorandum Opinion and Order, *Zurich American Insurance Company v. Covil Corporation, et al.*, 1:18-CV-00932-CCE-JLW (July 16, 2019) at 3 attached as Exhibit D. Similarly, Chief Justice Jean H. Toal (Ret.) found, in sustaining the default of Covil, that
>
>> Covil ceased to exist in 1993. Since that time, the Covil entity has been nothing more than a façade behind which the insurers stand and direct the action of its lawyers. The evidence at the hearing of this matter indicates that the insurers, sophisticated actors indeed made the considered decision not to answer for Covil.
>
> Order Denying Covil's Motion to Lift Entry of Default, *James Michael Hill v. Covil Corporation*, 2018-CP-40-04680, March 20, 2019 attached as Exhibit E. This order goes on to discuss WTH's and the Insurers' involvement in the decision not to answer for Covil, the actions in deciding to ignore repeated opportunities to answer as well as the history of Covil in asbestos litigation. Nor can it be disputed that the decisions made by WTH and the Insurers resulted in a verdict against Covil in excess of $30,000,000.

8

(ECF No. 27 at 4–5.) The Court agrees with Plaintiff that the mere fact that WTH's representation of Covil began close in time to resolution of the *Finch* case does not hinder or invalidate Plaintiff's alter ego claim.

Defendants contend that the alter ego doctrine is merely intended as a means of piercing the corporate veil and Plaintiff's application of an alter ego theory to a law firm's representation of its client is unprecedented. (*See* ECF No. 22 at 5–10; ECF No. 23 at 5–8.) It may be true that Plaintiff's pleading theory against WTH is novel given WTH's relationship with Covil as putative counsel and client, but Defendants have not offered controlling law to show there is a requirement that WTH be an officer, director, employee, or shareholder of Covil before alter ego theory can apply. Even if an ownership interest is required, Plaintiff may be able to invoke the principle of equitable ownership, which courts have recognized as a viable route to satisfying the elements of alter ego liability. *See, e.g.*, *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1051 (2d Cir. 1997) (citation omitted) ("[Under] the doctrine of equitable ownership, . . . an individual who exercises sufficient control over the corporation may be deemed an 'equitable owner', notwithstanding the fact that the individual is not a shareholder of the corporation."). Additionally, Plaintiff's declaratory judgment claim is not premised on a critique of opposing counsel's litigation strategy as such, but rather on the assertion that WTH, in conjunction with the Insurers, *was* Covil for all material purposes and controlled Covil to the Finches' detriment during the final stages of the *Finch* case.

Under the circumstances and the facts as pled, the Court cannot find there is "no possibility" or "glimmer of hope" that Plaintiff could succeed in proving: (1) WTH dominated and controlled Covil; and (2) inequitable consequences resulted to the

9

Finches. *See Oskin*, 735 S.E.2d at 465. Accordingly, Defendants have not shown that WTH was fraudulently joined.

Because remand is required under the forum defendant rule and this Court lacks diversity jurisdiction, the Court need not address the parties' contentions about the necessity *vel non* of Covil as a party to this action, or about its potential alignment as a plaintiff. The remaining motions pending before this Court are rendered moot by the necessity of remand.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to remand (ECF No. 13) is GRANTED, and all other pending motions—Zurich's motion to realign (ECF No. 4); Insurer's motion to dismiss (ECF No. 10); and WTH's motion to dismiss (ECF No. 11)—are DENIED as moot. This case is remanded to the Court of Common Pleas of Richland County, South Carolina. The Clerk of Court is directed to forward the file along with a certified copy of this Order to the Clerk of Court for Richland County.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

June 4, 2020
Greenville, South Carolina

10